Curia, per Earle, J.
The only question raised, is whether there was a conversion of the cotton by the defendant, so as to make him liable in trover. It seems to be unnecessary to discuss the general doctrine of lien for freight or carriage: even so far as concerns the claim of the defendant to be put on a footing of a common carrier, and to be allowed to retain the cotton until his freight was paid. Let it be conceded that he does stand on that footing, and in. the absence of any express agreement between himself and the plaintiff, that he was not bound to part with the cotton until the freight or carriage was paid. He was employed to haul.the cotton to Columbia, with instructions to sell it at a certain price — and if he could not obtain that price, to store it. From this general direction, it may be fairly inferred, either that the freight was to be paid on delivery to the consignee or warehouse man, or that the defendant was to look to the personal credit of the owner. Had he sold the cotton, doubtless he would have been entitled to pay the freight out of the proceeds. When he stored it, as his agency was at an end, and he could no longer claim any authority or control over it, unless he looked to the personal credit of the owner, he should have demanded the freight or carriage from the consignee or warehouse man, and have entered it in the name of the owner. If the freight *61 was to be paid on delivery to the warehouse man, be would have been responsible for the freight on receiving the cotton. If on demand made, he had refused to pay the freight, at the utmost the defendant might then have retained. But the case made, is, that without any demand of freight of the warehouse man, he stored the cotton in his own name, and thereby as he alleges, retained the whole three bags for an amount of freight of six dollars. This in itself, it seems to me, was an appropriation of the cotton to his own use; a disposition of it incompatible with the right of the owner ; .an act by which the owner was deprived of his right to dispose of it, and prevented from disposing of it according to his own pleasure. This, I think, was a conversion, if unauthorized by his instructions, and not justified by his claim for freight; when the plaintiff directed the cotton to be stored, in the absence of any proof to the contrary, it may be fairly presumed that it was to be stored in his own name and not that of another, so that he might dispose of it at will. And if the freight was to be paid on storing it, the defendant had no right to store it in his own name, until his freight was refused to be paid. But the ground on which the Court is most disposed and best satisfied to put the case, is, that afterwards, when the plaintiff applied for an order on the warehouse man for the delivery of the cotton, which was necessary, as the plaintiff was not known to be the owner, the defendant refused the order unless the plaintiff would give him his note for fifty dollars lent money, disclaiming-any authority or right to detain the cotton other than that, and making no claim for freight. “ If there be no express agreement in the case,” says Ch. Kent, 3 Com. 219, “the master is not bound to part with the goods until the freight is paid, but if he refuses to deliver the goods for other cause than the non-payment of freight, he cannot avail himself of the want of tender.”
The defendant’s refusal to deliver the .order for the cotton when demanded, upon his claim for money lent, was a waiver of his claim for freight. It was the exercise of a dominion over the cotton in exclusion and in defiance of the plaintiff’s right; it was an unlawful withholding of the property from the possession of the plaintiff, which is a conversion, (6 Bac. *62 Abr. 677,) and trover will lie, as in Boardman vs. Sill, 1 Camb. 410.
That be afterwards offered to give the order on being paid bis freight, did not cure the wrong. A material decline in the price of cotton in market may well have justified the plaintiff in refusing to accept it.
The Court is of opinion, that the motion to set aside the decree must be refused.